■ THE PEOPLE OF THE STATE OF NEW YORK, Respondent, v JERALD PRICE, Appellant. [647 NYS2d 746] —Judgment, Supreme Court, New York County (Howard Bell, J., on motion to dismiss; Renee White, J., at trial), rendered May 3, 1993, convicting defendant, after a jury trial, of robbery in the second degree, and sentencing him, as a second violent felony offender, to a term of 6 to 12 years, is affirmed.

The complainant's comment before the Grand Jury that he viewed "mug shots" prior to identifying defendant's photograph, while improper, did not impair the integrity of the Grand Jury proceeding within the meaning of CPL 210.35 (5). This test is not satisfied by a showing of "mere flaw, error or skewing" of the evidence; the test is "very precise and very high", and the remedy of dismissal of the indictment on that ground is "exceptional" (*People v Darby*, 75 NY2d 449, 455; *People v Winningham*, 209 AD2d 461, 462, *lv denied* 84 NY2d 1040; *see, People v Taylor*, 181 AD2d 408, 409, *lv denied* 79 NY2d 1055).

Further, the verdict was not against the weight of the evidence. It is well-settled that credibility determinations made by the fact-finder are entitled to great deference and should not be disturbed unless they are manifestly erroneous and so plainly unjustified by the evidence presented that rejection of the verdict is required in the interest of justice (*People v Bleakley*, 69 NY2d 490, 495; *People v Porto*, 226 AD2d 190; *People v Corporan*, 169 AD2d 643, *lv denied* 77 NY2d 959).

In the matter before us, the victim, who described the robbery in great detail, had ample time, approximately two minutes, in which to view the defendant while the entire incident unfolded. During this period of time, the victim looked directly at defendant, who pointed an object wrapped in a bag at him while another individual removed the victim's personal belongings from behind. The victim testified that he did not look at anyone or anything else except defendant. In addition, the victim's unobstructed view was from five to six feet away in an area that the victim described as illuminated by two street lights. Clearly, in view of the victim's detailed testimony and the victim's photographic lineup and in court identification of defendant, the jury was entitled to disregard the one alibi witness presented by the defense, who had a business relationship with defendant and was a friend of defendant's mother. While the alibi witness could recall with precision defendant's whereabouts for a seven hour period that took place two and one-half years before the trial, she was unable to give any details of meetings with defendant that occurred after the date of the robbery. We cannot now conclude that the verdict was "manifestly erroneous" or "unjustified" by the evidence (*People v Corporan, supra,* at 643); rather, this case presented a credibility issue clearly within the province of the jury. Concur—Rosenberger, J. P., Williams and Tom, JJ.

Ellerin and Wallach, JJ., dissent in a memorandum by Ellerin, J., as follows: On August 8, 1990, at 12:45 A.M., David Staton was walking west on the north side of 142d Street between Convent and Amsterdam Avenues. Because of construction, there were no street lights working on the side of the street where he was walking and the closest working street light was on the other side of the street, either directly across or 5 or 6 feet ahead of him. Suddenly, a man walked past Staton from behind, and, when he was 5 or 6 feet ahead, turned, immediately squatted down so that he was hidden from the street by a parked car, and told Staton not to move. The man pointed an object in a plastic bag at Staton and, although he did not believe that there was really a gun in it, Staton decided

not to take any chances and stood still. Another man then came up behind Staton and relieved him of his watch, ring and shoulder bag, from which he removed a wallet, while the man who was squatting down in front of Staton urged the other man to hurry. Staton stated that he looked directly at that man, at least at the beginning of the encounter, and, at trial, described him as a dark-skinned black man, 5 feet, 11 inches wearing a white T-shirt and jeans and a black furry hat with a brim in front that was less than two inches. He also identified defendant as being that man. After a period which Staton estimated at two minutes, the squatting man asked Staton if he was Spanish and spoke to him in Spanish. He then got up and told Staton to cross the street, which he did. After the robbers left, Staton retrieved his shoulder bag. He called the police almost immediately.

Shortly after, Staton provided a description of the squatting man to the police and went to the precinct to look at photographs. Although two of the men in the photographs resembled the man who robbed him, one of them was lighter in complexion and the other had more hair.[1]

On August 10, 1990, Staton reviewed drawers full of photographs of black males for about 45 minutes, during which time he selected seven photographs. When asked to rate them on a scale of 1 to 10, with 10 being the closest in appearance to the robber, he rated six of the photographs at 7 and one, which was a photograph of defendant,[2] as an "almost 9".

Defendant was arrested for this crime at his home over four months later, on December 15, 1990. At trial, Staton, who did not testify at the *Wade* hearing, testified that an officer called him and stated that there had been an arrest and asked him to come down to the precinct. He admitted on cross-examination that the police told him to inform them if he saw the person he had previously identified from the photograph. Staton picked defendant from a lineup of six seated men and identified him as the robber. The purpose of seating the men was to diminish the effect of any height differences among them; it also had the practical effect of keeping Staton from being aware of defendant's height, which is 5 feet 8 inches. Staton noted to the officer that defendant looked lighter in complexion than the person who committed the robbery but attributed that to the better lighting available at the lineup.

---

1. There was no explanation as to how Staton was able to ascertain the amount of hair of the robber, whom he described as wearing a furry hat.

2. The photograph had been taken eight years previously, when defendant was 20.

The defendant's case consisted of the testimony of Bareemah Musawwir, who testified that on the day and time of the robbery, defendant had been attending a meeting with members of a music corporation which he and three other young men had formed in 1990. Ms. Musawwir was the group's manager as well as the mother of one of its members, and is a college graduate, with no criminal record, working in a managerial capacity at Schindler Elevator Corporation. Ms. Musawwir particularly remembered the series of meetings, which were contentious and troubling for her, and which had taken place, on and off, during August 6th and 7th and had culminated in a late night session on the 7th which lasted well into the early morning hours of the 8th. Her recollection of the date was further reinforced by the fact that her house had been robbed on the next day.

We would find that the verdict finding defendant guilty beyond a reasonable doubt based upon this record was against the weight of the evidence (*see, People v Bleakley*, 69 NY2d 490, 495). The complaining witness's opportunity to observe the man who robbed him, on a poorly lit street, late at night, while the man, wearing a brimmed hat, squatted 5 or 6 feet away from him, was minimal. Furthermore, the victim's accuracy in identifying defendant as the robber was cast into serious doubt at every point at which he was asked to make an identification. First, he picked seven photographs of people who resembled the robber and never stated that defendant's photo was that of the person who robbed him, but only that it was closer ("almost 9") than the others, who were rated at 7.

After that initial photographic identification, which was at least conducted in close proximity to the time of the robbery, the victim did not have an opportunity to view a lineup for four months, and at that time he was specifically told by the police to see if he recognized the person he had picked out in the photo, a condemned practice long recognized as conducive to misidentification (*People v Jerome*, 111 AD2d 874; *People v Davis*, 169 AD2d 508). He then qualified his identification at the lineup by stating that defendant appeared lighter in complexion than the robber. Although he explained that discrepancy by saying that it could be due to the fact that the lighting was better at the lineup than it had been during the robbery, at trial he continued to describe his attacker as a dark-skinned male and never indicated that his ability to perceive his complexion was hampered by inadequate lighting. Finally, he described his attacker as 5 feet 11 inches, a significant difference from defendant's 5 feet 8 inches.

Particularly when taken in the context of defendant's strong, and unimpeached, alibi defense, this evidence did not credibly establish, beyond a reasonable doubt, that defendant was the man who accosted Mr. Staton. It is therefore our view that his conviction should be set aside, and the indictment dismissed.